HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DELANO MARCIEL THOMAS,

    Plaintiff,

v.

PACIFIC COUNTY SHERIFF'S DEPARTMENT, et al.,

    Defendants.

NO. 3:21-cv-05898-RAJ

AMENDED ORDER

This matter comes before the Court on Defendants' Pacific County Sheriff's Department, Sean Eastham, Johnathon Ashley, Nicholas Zimmerman, and Anthony Kimball's ("County Defendants" or "Defendants") motion seeking consideration of their previously filed motion for summary judgment, Dkt. # 33, and Plaintiff Delano Thomas's ("Plaintiff" or "Thomas") motion to set a scheduling conference, Dkt. # 47. For the reasons set forth below, the Court **GRANTS in part** Defendants' Motion for Summary Judgment, Dkt. # 33, and **DENIES as moot** Plaintiff's motion to set a scheduling conference. Dkt. # 47.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In November 2019, Plaintiff was arrested and charged with assault in the first degree pursuant to RCW 9A.36.11(1)(a) and unlawful possession of a firearm in the first degree pursuant to RCW 9.41.010, stemming from an incident that occurred in Pacific County on November 7, 2019. Dkt. # 1-2 (Complaint) ¶ 1.1; Dkt. # 6 (Answer of County Defendants), ¶ 1.1. On November 6, a fight occurred between Plaintiff's dog and a dog owned by a neighbor, Naomi Schuyler. Compl. ¶ 4.2. Plaintiff attempted to break up the fight, and in so doing, his right arm was injured. *Id.* The next day, Plaintiff called 911 to report that he had been threatened by a white male that Plaintiff identified as Jesse Westcott ("Westcott"). *Id.* ¶ 4.3. According to Plaintiff, Westcott was friends with Schuyler. *Id.* According to Plaintiff, Westcott threatened Plaintiff's life, saying that he was in a local fight club and Plaintiff "would be dead." *Id.* ¶ 4.4. After making the threat, Westcott drove away from Plaintiff's house in a white Chrysler vehicle. *Id.*

Defendant Nicholas Zimmerman, a Deputy with the Pacific County Sheriff's Department, responded to Plaintiff's call concerning the threat. Dkt. # 18 (Declaration of Nicholas Zimmerman) ¶ 2; Dkt. # 39 (Supplemental Thomas Declaration), Ex. F (November 7, 2019 Pacific County Sheriff Call Detail Report for "Threats"). Zimmerman created a Deputy Report dated November 19 memorializing his response to Plaintiff's call. Dkt. # 18, Ex. A. According to both Plaintiff and Zimmerman's Deputy Report, Plaintiff expressed fear that Westcott would return to his residence due to the prior night's dogfight. *Id.* Zimmerman told Plaintiff that if Westcott were to return, he could take "reasonable steps" to defend himself and his family if necessary. *Id.* Zimmerman also told Plaintiff that he could seek a court order prohibiting Westcott from contacting him. *Id.* Zimmerman indicated to Plaintiff that he would attempt to reach Westcott, but ultimately, he was unable to contact him before the end of his shift. *Id.* According to Zimmerman's

report, he later learned that Westcott and Plaintiff were involved in an altercation at Plaintiff's home that same evening. *Id.* Zimmerman states that he did not respond to the altercation at Plaintiff's home and took no part in Plaintiff's arrest or the collection of any evidence related to the altercation. *Id.* ¶ 3.

After Zimmerman concluded his response to Plaintiff's 911 call, Westcott and Genevieve May ("May") returned to Plaintiff's home in a white Chrysler. Compl. ¶¶ 4.6, 4.7. According to Plaintiff, Westcott was armed with a collapsible baton and May was armed with a knife. *Id.* Plaintiff, who had armed himself with a handgun, states that Westcott "confronted" him and charged at him. *Id.* ¶ 4.8. Plaintiff responded by saying, "don't do this." *Id.* Plaintiff then shot Westcott in what he describes as an act of self-defense. *Id.* Plaintiff called 911 to report the shooting and told the operator that he had placed his handgun in the trunk of his vehicle. *Id.* ¶ 4.9; Dkt. # 15 (Declaration of Sean Eastham), Ex. A (November 7, 2019 Pacific County Sheriff Call Detail Report for "Weapon Offense").

Pacific County Sheriff's Deputy Sean Eastham responded to the call. Compl. ¶ 4.10; Dkt. # 15 ¶ 3. According to Eastham's Deputy Incident Report, when he arrived at the scene, he saw Westcott lying in the street in front of Plaintiff's home. Dkt. # 15, Ex. B. May was applying pressure to a wound in Westcott's left groin area. *Id.* Westcott told Eastham that Plaintiff shot him as Westcott stood in the street. *Id.* First responders soon arrived to tend to Westcott. *Id.* Eastham then spoke to Plaintiff and obtained his permission to open the truck of Plaintiff's vehicle. *Id.* There, Eastham found a .380 handgun, which Eastham took as evidence. *Id.*

Plaintiff explained to Eastham that Westcott threatened him earlier that day and that Deputy Zimmerman responded to the incident. *Id.* At this point, Eastham returned to Westcott, as first responders were now on the scene. *Id.* He saw a bullet hole in Westcott's

AMENDED ORDER - 3

left groin area and saw a collapsible baton on the ground next to where Westcott had been. *Id.* Eastham's report indicates that May told Eastham that Westcott had not removed the baton from his waistband or made any threats towards Plaintiff. *Id.* May said that she and Westcott drove to take care of a friend's dog nearby, and as they left the friend's home, they stopped in front of Plaintiff's house. *Id.* Westcott got out of the car and began talking with Plaintiff about the recent dog fight. *Id.* According to the story that May told Eastham, Plaintiff approached Westcott and shot him. *Id.*

According to Eastham, Plaintiff said that Westcott entered Plaintiff's yard and was about three feet past a wood post on the edge of Plaintiff's yard when Plaintiff shot Westcott. Dkt. # 15, Ex. B. However, Eastham reported that he found the bullet casing on the edge of the street outside of Plaintiff's yard, approximately thirty feet from where Plaintiff described standing while shooting the gun. *Id.* Eastham also found the bullet itself in the middle of the street and gathered this as evidence. *Id.* As he wrote in his deputy report, "There was no blood or any evidence in [Plaintiff's] yard. All the evidence was located in the street." *Id.*

Eastham then arrested Plaintiff. *Id.* Eastham's report states that he confronted Plaintiff with the discrepancy between where the evidence was found and where Plaintiff claimed he shot Westcott. *Id.* According to Eastham, Plaintiff then admitted that he fired the shot while closer to the street than he originally described. *Id.* The complaint alleges that Eastham "totally disregarded Mr. Westcott's and Ms. May contracting stories on what had occurred, failed to interview witnesses, and speak to Deputy Zimmerman about his prior communications and instructions to [Plaintiff], instead he arrested [Plaintiff] who was the victim of an assault by Mr. Westcott and Ms. May." Compl. ¶ 4.16. Around this same time, Pacific County Sergeant Jonathon Ashley and Pacific County Deputy Kimball were dispatched to Ocean Beach Hospital where they interviewed Westcott, obtained his

clothing, and collected it as evidence. Dkt. # 14 (Declaration of Jonathon Ashley) ¶¶ 2, 3; Dkt. # 16 (Declaration of Tony Kimball) ¶¶ 2, 3.

Plaintiff was charged with assault in the first degree. Dkt. #41, Ex. B (Information). Additionally, because Plaintiff had at least four prior felony convictions in California, he was also charged with unlawful possession of a firearm in the first degree. *Id.*; *see also* Dkt. 15, Ex. C (Thomas criminal history record). In November 2020 Plaintiff entered a plea agreement in which the Assault charge was dismissed and he entered a guilty plea for Unlawful Possession of a Firearm. *Id.*, Ex. C (Thomas Plea Agreement). He was sentenced to 15 months of incarceration. *Id.* As part of his plea agreement, Plaintiff agreed to waive any appeal, personal restraint petition, or collateral attack of the criminal case against him. *Id.* Further, both Plaintiff and the State of Washington agreed that the court could consider the probable cause statement and police reports to establish a factual basis for the plea. *Id.*

On September 13, 2021, Plaintiff filed a Standard Tort Claim Form with the Pacific County Board of Commissioners asserting civil rights violations in connection with his arrest. *Id.*, Ex. D. Plaintiff now brings claims under 42 U.S.C. § 1983 and Washington state law, including malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress (outrage), false arrest, negligence, defamation, and abuse of process. Compl. ¶¶ 5.1-13.5. Plaintiff alleges that his constitutional rights were violated by the Pacific County Sheriff's Office and the various officers named as defendants when he was arrested, and that law enforcement should have known that Plaintiff's conduct was done in self-defense. *Id.* at ¶¶ 5.1, 5.3. Further, Plaintiff alleges that the charges brought against him were based on false reporting, a failure to investigate and collect exculpatory evidence by law enforcement, and false statements made by Westcott and May. *Id.* at ¶¶ 6.1, 10.1.

On November 24, 2019, Plaintiff filed the his complaint in Pacific County Superior Court. Dkt. # 1-2. County Defendants, through counsel, removed the matter to federal court pursuant to 28 U.S.C. § 1441(a) on December 13, 2021. Dkt. # 1. County Defendants filed an Answer on December 23, 2021. Dkt. # 6. County Defendants then filed for summary judgment seeking dismissal of the case on January 10, 2022. Dkt. # 12. Plaintiff filed a Response which requested an opportunity to conduct discovery and obtain evidence for his claims. Dkt. # 21. This Court deferred ruling on County Defendants' motion and granted Plaintiff 45 days, as requested, to conduct discovery. Dkt. # 30 at 5. Further, this Court granted Defendants leave to re-file their summary motion following the close of discovery. *Id.*

Soon thereafter, County Defendants re-filed their summary judgment motion. Dkt. # 33. Plaintiff filed a response, Dkt. # 38, and a supplemental response, Dkt. # 40 in opposition to Defendants' motion. Defendants filed a supplemental reply asking this court to strike each exhibit attached to Plaintiff's Supplemental Declaration on the basis of hearsay and relevance objections. Dkt. # 39. On April 27, 2023, this Court ordered Plaintiff to show cause why Defendants Jesse Westcott and Genevieve May should not be dismissed from this matter for want of prosecution. Dkt. # 42. Plaintiff provided no response, and this Court ordered that Westcott and May were dismissed from this matter without prejudice for failure to prosecute. Dkt. # 44.

In May 2023, Plaintiff obtained counsel, who filed a motion seeking to have this Court set a scheduling conference and issue a scheduling order. Dkt. # 47. County Defendants opposed setting a trial date prior to the resolution of the pending summary judgment motion. Dkt. # 49.

## II. SUMMARY JUDGMENT

### a. Evidence Submitted

In support of their motion for summary judgment, County Defendants submit the following declarations:

- Deputy Eastham, who arrested Plaintiff after the shooting. Dkt. # 15. Attached to his declaration is a Pacific County Sheriff Call Detail Log for "Weapon Offense" (Ex. A), Eastham's Deputy Incident Report (Ex. B), Plaintiff's criminal history record (Ex. C), and Eastham's Probable Cause Statement (Ex. D).

- Deputy Zimmerman, who responded to Plaintiff's initial call concerning Westcott's threat. Dkt. # 18. Attached to his declaration is his report of his response to Plaintiff's call (Ex. A).

- Sergeant Ashley, who interviewed Westcott at the hospital and took the clothing Westcott wore into evidence. Dkt. # 14. Attached to his declaration is a copy of his report of his interview with Westcott (Ex. A).

- Deputy Kimball, who, along with Sargeant Ashley, interviewed Westcott at the hospital and took the clothing Westcott wore into evidence. Dkt. # 16. Attached to his declaration is a copy of his report of his interview with Westcott (Ex. A).

- Robin Souvenir, who was the Pacific County Sheriff at the time of the incidents described in Plaintiff's complaint. Dkt. # 17. Attached to Souvenir's declaration is a copy of Pacific County's policies on law enforcement authority, oath of office, policy manual, organizational structure, training policy, use of force policy, and policies concerning searches and seizures (Ex. A).

In opposition to County Defendants' motion for summary judgment, Plaintiff submits the following declarations:

- Plaintiff Delano Thomas. Dkt. ## 22, 41. Attached to Plaintiff's supplemental declaration (Dkt. # 41) is the Declaration of Probable Cause (Ex. A), Information filed in connection with his criminal case (Ex. B), Plaintiff's Plea Agreement (Ex. C), Plaintiff's Standard Tort Claim filed with the Pacific County Board of Commissioners (Ex. D), a June 2020 article from the Chinook Observer about Plaintiff titled "Man Still in Jail for Shooting He Says Was in Self-Defense" (Ex. E), and Pacific County Sheriff Call Detail Report for "Threats" (Ex. F).

- David Seals, a retired police officer. Dkt. # 23. Seals states that he personally arrived on the scene of the shooting shortly after the incident. He states that he observed a knife on the scene, and a young blond woman claimed ownership of the knife. He says that Pacific County deputies never asked him for a statement and did not take his contact information. Attached to his declaration is correspondence showing where he reached out to Plaintiff's former criminal counsel and provided his recollection of the scene (Ex. A).

- Franklin Wilson, a licensed private investigator. Dkt. # 24. Franklin states that Plaintiff's criminal matter was plagued with discovery delays and that Pacific County failed to produce witnesses for the defense to interview or provide medical records supporting victims' injuries. Attached to his declaration, *inter alia*, are the November 6, 2019 Pacific County Call Detail Log for the dogfight and a subsequent physical confrontation between Schuyler and Wendee Thomas (Ex. 6), and Wilson's notes and impressions

of the audio recordings of Ashley's interview of Westcott and Eastham's interview of May (Ex. 7). According to Wilson, these interviews contain exculpatory evidence that did not make it into official police reports.

### b. Legal Standard

Summary judgment is supported if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. Procedure 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets his or her burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). A genuine dispute of material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

To establish that a fact cannot be genuinely disputed, the movant may cite the record or show "that the materials cited do not establish the… presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In response to a motion for summary judgment, the non-moving party must present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.*, 7 F.3d 137, 138 (9th. Cir. 1993). Although "all justifiable inferences" must be drawn in the non-movant's favor, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)), "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S.

at 252. "The Court's ultimate inquiry is to determine whether the 'specific facts' set forth by the non-moving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

### III.   DISCUSSION

#### a.   Federal Claims

County Defendants seek dismissal of all federal civil rights claims against them in their individual capacities on the merits and on the grounds of qualified immunity. Dkt. # 12 at 1-2. The Pacific County Sheriff's Department moves for dismissal of all federal civil rights claims on the ground that the complaint is factually deficient, and Plaintiff lacks evidence to prove municipal entity liability. *Id.*

##### i.   Illegal Seizure and Arrest

Plaintiff alleges that he was deprived of his right to be free from illegal searches and seizures, in violation of the Fourth Amendment, by the actions of Eastham, Ashley, Zimmerman, and Kimball. Compl. ¶ 5.1. Defendants argue that, at the very least, federal claims against Ashley, Kimball, and Zimmerman should be dismissed because Plaintiff has failed to prove that they personally participated in the deprivation of Plaintiff's civil rights. Dkt. # 12 at 9. Further, County Defendants argue that each officer is entitled to qualified immunity. *Id.*

*1.   Personal Participation of Kimball, Ashley, and Zimmerman.*

At the outset, this Court must consider the extent to which each of the named officers—Eastham, Zimmerman, Ashley, and Kimball—were personally involved in Plaintiff's alleged unlawful arrest. Based on the facts alleged in the complaint and the exhibits submitted by the parties, it is clear that Deputies Zimmerman and Kimball and

Sergeant Ashley did not personally participate in the seizure or arrest of Plaintiff. Zimmerman responded to Plaintiff's *earlier* call concerning Westcott's threat, Compl. ¶ 4.5, and Ashley and Kimball collected recorded statements from Westcott and May and obtained Westcott's clothing, which they provided to Eastham as evidence. Dkt. ## 14, 16. A plaintiff in a Section 1983 action must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1335 (9th Cir. 1981). Here, Plaintiff's allegations that Kimball, Ashley, and Zimmerman were involved in the violation of his federal civil rights due to Plaintiff's arrest are conclusory and rest only on the officers' peripheral involvement in the ongoing disputes between Plaintiff, Westcott, and May. Plaintiff's federal civil rights claims for illegal seizure and arrest are **DISMISSED** as to Defendants Kimball, Ashley, and Zimmerman for this reason.

## 2. Qualified Immunity

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, the court engages in a two-part analysis. The court considers whether "the facts alleged show the officers' conduct violated a constitutional right." *Navarro v. City of South Gate*, 81 Fed. Appx. 192, 193 (9th Cir. 2003). If the court concludes that a violation could be made out, the court asks if the right was clearly established. *Id.* "That is, we must determine whether '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Plaintiff "bears the burden of showing that the right at issue was clearly established."

*Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability… it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under Section 1983. *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) ("To prevail on [plaintiff's] §1983 claim for false arrest and imprisonment, [plaintiff] would have to demonstrate there was no probable cause to arrest him."). "Probable cause exists when under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the individual arrested] had committed a crime." *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002) (internal quotations omitted). "In a § 1983 action seeking damages for an arrest without probable cause, the qualified immunity inquiry… is an objective one, focusing on whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Navarro*, 81 Fed. Appx. at 194 (citing *Mendocino Env't Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 462 (9th Cir. 1994)) (internal quotations omitted). In this context, "the defendant's knowledge is relevant, since the objective analysis is focused on a reasonable officer confronted with the facts and circumstances actually known to the officer." *Id.*

This Court finds that defendant Eastham's conduct in arresting Plaintiff did not violate Plaintiff's constitutional rights, as Plaintiff has not produced evidence to show that Eastham did not have probable cause to arrest Plaintiff after the shooting of Westcott. By Plaintiff's own admission, he shot Westcott in the groin. Dkt. # 22 ¶ 16 ("…I fired a shot at [Westcott]…"). Plaintiff took this action based on his belief that Westcott and May

were armed and likely to harm him. These facts alone constitute probable cause for his arrest for assault in the first degree in violation of RCW 9A.36.011(1)(a)[1] and unlawful possession of a firearm in violation of RCW 9.41.040.[2]

Plaintiff's case rests on his assertion that his arrest lacked probable cause because he acted in self-defense. Dkt. # 22 ¶ 18. He alleges that Eastham and other officers knew that Westcott and May were the aggressors, knew that May was armed with a knife, and allowed May to "walk away with exculpatory evidence" that would have established that Plaintiff acted in self-defense. *Id.* However, that Plaintiff may have had a self-defense argument that he reasonably believed that Westcott and May were going to harm him is not enough to undo a finding of probable cause. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("The mere existence of some evidence that could suggest self-defense does not negate probable cause"); *see also Calvin v. Whatcom Cnty.*, No. C07-273RSL, 2009 WL 3187589, at *5 n. 7 (W.D. Wash. Sept. 30, 2009). According to Eastham, he based his finding of probable cause on the statements of the parties and the evidence found on the scene. Dkt. # 15. Eastham found particularly important the location of the bullet and bullet casing connected with the shot. These pieces of evidence were found in the street, feet away from where Plaintiff indicated that he stood as he fired at Westcott, and feet away from where they would have been had Westcott been shot while standing in Plaintiff's yard. Dkt. # 15, Ex. D. Plaintiff does not present evidence to dispute this fact. Although Plaintiff claims that County Defendants left exculpatory evidence at the scene, he does not clearly state what that evidence is or how it would have altered

---

[1] RCW 9A.36.011(1)(a) provides that a person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm, assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death.

[2] RCW 9.41.040 provides that a person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense.

Eastham's probable cause analysis at the time. Neither does Plaintiff explain the significance of May being armed with a knife, given that it is undisputed that Westcott had on him a collapsible baton. Examining these undisputed facts, and viewing these facts from the standpoint of an objectively reasonable police officer, no reasonable jury could find there was not a fair probability that Plaintiff had committed a crime. *C.D. v. City of Anaheim*, No. 8:17-CV-01162-DOC, 2018 WL 5816201, at *8 (C.D. Cal. Aug. 24, 2018). Because the facts in the complaint, taken in the light most favorable to Plaintiff, show that Plaintiff's arrest was supported by probable cause, he cannot plead a constitutional wrongful arrest claim, and his claim is subject to **DISMISSAL** on this basis. *Fayer v. Vaughan*, 649 F.3d 1061, 1065 (9th Cir. 2011).

### ii. *Monell* Liability

Plaintiff alleges that the Pacific County Sheriff's Office had a mandatory duty of care to hire properly and adequately train, retain, supervise, and discipline Eastham, Ashley, Zimmerman, and Kimball so as to avoid unreasonable risk of harm to its citizens, and failed to take necessary, proper, or adequate measures in order to prevent the violation of Plaintiff's rights. Compl. ¶ 5.3. According to Plaintiff, Defendants knew or should have known that Plaintiff's conduct was in self-defense and did not constitute probable cause to arrest him, and Pacific County's polices, practices and customs caused him to be deprived of his right to be free from unreasonable seizures and excessive force. *Id.* ¶¶ 5.3, 5.4. Defendants argue that there is no underlying constitutional violation, and therefore no cognizable claim for municipal liability under Section 1983. Dkt. # 12 at 13-14.

To establish municipal, or *Monell*, liability Plaintiff must provide the existence of an unconstitutional government policy, regulation, or custom that caused the alleged deprivation of rights. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988); *see also Monell v. New York City. Dept. of Soc. Serv.*, 485 u.S. 112 (1978). "To impose liability

against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006).

As discussed *supra*, Section III.a.i.2, Plaintiff has not presented any evidence that Eastham (or Zimmerman, Ashley, and Kimball) violated his constitutional rights. Further, Plaintiff has not presented any evidence that Pacific County failed to adequately hire properly and adequately train, retain, supervise, and discipline the defendant officers. The same is true of Plaintiff's claim that Pacific County failed to take necessary, proper, or adequate measures in order to prevent the violation of Plaintiff's rights. In regard to his *Monell* claim, Plaintiff asserts that his alleged wrongful arrest reflects deficient training and inappropriate policies, but does not point to exactly what policy or practice drove the officers' violation of his rights. Plaintiff's assertion that he acted in self-defense and conclusory accusation that exculpatory evidence was ignored due to a failure of policy or training are simply insufficient to create a material issue of fact as to *Monell* liability. This claim, therefore, is **DISMISSED.**

### iii. Judicial Deception

Plaintiff's second cause of action is for judicial deception. He alleges that the County Defendants "made deliberate falsehoods and acted with disregard for the truth in submitting official sworn reports and failing to file reports outlining exculpatory evidence to the Pacific County Prosecuting Attorney." Compl. ¶ 6.1 But for the officers' dishonesty, Plaintiff alleges, the criminal charges against Plaintiff would not have occurred. *Id.* ¶ 6.2. County Defendants do not address Plaintiff's judicial deception claim specifically in their briefing, except to say that Ashley, Kimball, and Zimmerman did not

personally participate in any attempt to disregard the truth in submitting reports. Dkt. # 12, 9-11. However, in any event, Plaintiff's claim cannot survive summary judgment.

To survive summary judgment on a judicial deception claim, Plaintiff "must 1) make a substantial showing of [the officers'] deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the [arrest] would not have occurred." *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). Plaintiff cannot clear this bar. Plaintiff attacks Eastham's probable cause statement, Dkt. # 41, Ex. A., arguing that it presents conflicting testimony between May, Westcott, and Thomas, and fails to inform the Pacific County court that May was armed—information that Plaintiff believes is exculpatory. Dkt. # 40 at 2. However, the fact that the probable cause statement presents the statements of Thomas, Westcott, and May does not establish that Eastham provided "deliberate falsehoods" or acted with "reckless disregard for the truth." It simply shows that Eastham included in his statement the divergent and conflicting stories of the three main participants of the altercation. And even if this Court were to find that Eastham deliberately failed to mention May being armed with a knife, the omission was immaterial. *Chism v. Washington State*, 661 F.3d 380, 387-88 (9th Cir. 2011) (to make out a judicial deception claim, plaintiff must establish that false statements or omissions were material to the court's probable cause determination); *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) ("Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause."). For the reasons discussed above, this Court does not find it likely that the Pacific County Superior Court would have declined to issue an arrest warrant had it known that May was also armed, as the probable cause statement made clear that Westcott was in possession of a weapon at the time of the shooting and Plaintiff himself declared that he shot Westcott. Dkt. # 41, Ex. A.

Additionally, Plaintiff's challenge to the statements within the probable cause statement fail because, as a part of Plaintiff's plea agreement stemming from the shooting, Plaintiff agreed that the probable cause statement could be used to establish a factual basis for his plea. Dkt. # 41, Ex. C. The probable cause statement included the following admissions from Plaintiff: that he had a firearm and placed it in the trunk of his car, that he shot Westcott, and that he purposefully aimed towards the lower part of Westcott's body so as to avoid his chest area. Dkt. # 41, Ex. A. Plaintiff's stipulation to the factual basis for his plea and Plaintiff's waiver of his opportunity to challenge the facts underlying the charges against him severely undercut his claim of judicial deception. All told, Plaintiff has not presented evidence that the probable cause statement contains reckless or deliberate false statements or omissions, and such false statements or omissions were material to the court's probable cause determination. Therefore, Plaintiff's second cause of action is **DISMISSED.**

### b. State Law Claims

Plaintiff brings state law claims for malicious prosecution, intentional infliction of emotional distress (outrage), negligent infliction of emotional distress, false arrest, negligence, defamation, and abuse of process. Compl. ¶¶ 7.1-13.5. County Defendants move for dismissal of Plaintiff's state law claims on the basis of the *Heck* doctrine, *Heck v. Humphrey*, 512 U.S. 477 (1994), the statute of limitations, statutory immunities, or other state law defenses. Dkt. # 12 at 2.

Under 28 U.S.C. § 1367(c), a district court may "decline to exercise supplemental jurisdiction over a claim … if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The Supreme Court has stated, and [the Ninth Circuit has] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors…will point toward declining to exercise

jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). As discussed, *supra*, this Court will grant summary judgment to County Defendants on Plaintiff's first and second causes of action, and only Plaintiff's state law claims remain. There is no indication that Plaintiff's state law claims cannot be fairly decided in Washington state court and concerns of judicial economy do not weigh in favor of this Court retaining jurisdiction over the remaining claims. *See Acri*, 114 F.3d at 1001 (discretion to exercise supplemental jurisdiction is informed by the values of economy, convenience, fairness, and comity). This Court, therefore, declines to exercise supplemental jurisdiction over the remainder of Plaintiff's state law claims.

### c. County Defendants' Request to Strike

County Defendants request in their supplemental reply that this Court strike each exhibit attached to Plaintiff's supplemental declaration at Dkt. # 41 on the basis of hearsay and relevance objections. Dkt. # 39 at 2-3. The documents County Defendants seek to strike include the probable cause statement, which County Defendants also submitted in support of their motion for summary judgment and attached to Eastham's declaration as Exhibit D. Dkt. # 15. Other documents, such as the Information filed with Pacific County Superior Court (Dkt. #41, Ex. B) and Plaintiff's plea agreement (Dkt. # 41, Ex. B) are state court records.

The Court declines to strike the exhibits submitted by Plaintiff. Evidence submitted in connection with summary judgment does not have to be produced in a form that would be admissible at trial in order to avoid summary judgment. *Varney v. Air & Liquid Sys. Corp.*, No. C18-5105 RJB, 2019 WL 2409632, at *6 (W.D. Wash. June 7, 2019) (citing *Celotex*, 477 U.S. at 324). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere

AMENDED ORDER - 18

pleadings themselves…" *Celotex*, 477 U.S. at 324. This could include "depositions, documents, electronically stored information, affidavits or declarations, stipulations… admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). Such is the case here. Therefore, the Court declines to strike Plaintiff's supplemental declaration and the exhibits attached thereto.

### IV.  CONCLUSION

For the foregoing reasons, County Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's first and second causes of action. Dkt. # 33. This Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims, which arise under Washington state law, and therefore **REMANDS** these claims to Pacific County Superior Court. Plaintiff's Motion to Set a Scheduling Conference is **DENIED as moot**. Dkt. # 47.

DATED this 2nd day of November, 2023.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge